## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                    Case No. 24-cr-234 (JWB/DLM)

              Plaintiff,

v.                                           **REPORT AND**
                                             **RECOMMENDATION**
Ryan Brandstrom,                             **AND ORDER**

              Defendant.

This matter is before the Court on Defendant Ryan Brandstrom's Motion to Suppress Evidence Obtained Pursuant to Residential Search Warrant and Affidavits (Doc. 57); Renewed Motion for Independent Laboratory Testing (Doc. 59); Motion to Declare U.S.S.G. § 2D1.1 Invalid as Applied to Amphetamine Sulphate, or in the Alternative Apply Pre-2001 Cocaine Guideline, or for Downward Variance (Doc. 62); Motion to Sever Count 8 (Doc. 63); Motion to Dismiss the Indictment for Outrageous Government Conduct (Doc. 64); and Motion for Bill of Particulars (Doc. 66). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

The Court held a motions hearing on October 21, 2025. (Docs. 69 (Minutes), 71 (Transcript).) Brad Endicott represented the government. Mr. Brandstrom, acting pro se, represented himself, with Adrian LaFavor-Montez present as stand-by counsel. The government called no witnesses, but offered, and the Court admitted, Government Exhibit 1, the application, affidavit, and warrant to search Mr. Brandstrom's residence. Mr.

Brandstrom called no witnesses and offered no exhibits. For the reasons explained below, the Court denies Mr. Brandstrom's Renewed Motion for Independent Laboratory Testing (Doc. 59); Motion to Declare U.S.S.G. § 2D1.1 Invalid as Applied to Amphetamine Sulphate, or in the Alternative Apply Pre-2001 Cocaine Guideline, or for Downward Variance (Doc. 62); and Motion to Sever Count 8 (Doc. 63). The Court recommends that Mr. Brandstrom's Motion to Suppress Evidence Obtained Pursuant to Residential Search Warrant and Affidavits (Doc. 57) and Motion to Dismiss the Indictment for Outrageous Government Conduct (Doc. 64) be denied.

## BACKGROUND

On August 27, 2024, Mr. Brandstrom was charged by eight-count indictment with one count of Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; five counts of Distribution of a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); one count of Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and one count of Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). (*See generally* Doc. 1.) In the indictment, the government alleges that between August 2017 and December 2023, Mr. Brandstrom operated an amphetamine trafficking scheme on the dark web and encrypted marketplaces, using the United States mail to distribute controlled substances across the country.

On December 1, 2023, during the investigation into Mr. Brandstrom's activities, law enforcement sought and obtained a federal warrant to search and seize items from his residence, detached garage, two vehicles, his person, and multiple financial accounts.

2

(Gov't Ex. 1 at 1-5, *found at* Doc. 73-1.) In support of probable cause for the warrant, the affidavit explains that federal law enforcement agents had been investigating "Fastjack1" a "known darknet narcotics vendor operating in the Minnesota area" since May 2021. (*Id.* ¶ 16.) The affidavit states, that "in May 2021, federal law enforcement "located Fastjack1 on the darknet marketplace White House Market, where Fastjack1 advertised listings for 'Adderall Substitute'[.]" (*Id.* ¶ 19.) The affidavit goes on to explain that in August 2021, an undercover Homeland Security Investigations ("HSI") agent conducted a controlled buy of "50 x Adderall Substitute 30 mg" from Fastjack1 on the "darknet marketplace White House Market in exchange for approximately 1.2899 [M]onero[1] (approx. $300.00)." (*Id.* ¶ 21.) The undercover agent directed the shipment to a government-controlled undercover address in Colorado; Fastjack1 confirmed the address and provided a United States Postal Service tracking number. (*Id.*) Law enforcement received a package a few days later with the same tracking number that Fastjack1 had provided and a return address on Wooddale Drive in Saint Paul, Minnesota, 55125. (*Id.* ¶ 22.) The affidavit states that law enforcement opened the package and discovered "five white mylar pouches," and inside each pouch was 10 "blue/clear capsules with a white powdery substance, totaling 16.5 grams of laboratory confirmed amphetamine and caffeine." (*Id.*)

The affidavit continues that in May 2022, the undercover agent communicated with Fastjack1 over a chat platform to purchase "three packs of Adderall Substitute x 60mg[.]"

---

[1]The affidavit explains that Monero is "a cryptocurrency which uses a blockchain with privacy-enhancing technologies to obfuscate transactions to achieve anonymity and fungibility. Observers cannot decipher addresses trading Monero, transaction amounts, address balances, or transaction histories." (Gov't Ex. 1 at 17, n.6.)

(*Id*. ¶ 25.) The undercover agent transferred 0.0095 bitcoin (approximately $368.80) to an address Fastjack1 provided and directed the shipment to an undercover address in law enforcement's control. (*Id.*) That same day, law enforcement conducted surveillance on Mr. Brandstrom's residence. (*Id*.) Law enforcement officers observed Mr. Brandstrom leave his residence carrying a white bag, which he placed in his vehicle. (*Id*. ¶ 26.) Law enforcement officers then followed Mr. Brandstrom to the United States Post Office at 940 44th Ave NE, Minneapolis, MN 55421, and observed Mr. Brandstrom place multiple items in a United States Postal Service (USPS) blue mail collection box, then leave the area. (*Id*.)

Immediately after Mr. Brandstrom left the mail collection box, a United States Postal Inspection Service ("USPIS") inspector accessed the box's contents and discovered the parcel related to the undercover purchase. (*Id*. ¶ 27.) Law enforcement opened the parcel, which contained consignee information Fastjack1 provided to the undercover agent, and discovered a "manila envelope, invoice, and three black mylar bags that each held ten blue/clear capsules with a white powdery substance, totaling 8.0 grams of laboratory-confirmed amphetamine and caffeine." (*Id*.)

The affidavit further describes an undercover purchase from October 26, 2022, when the HSI undercover agent conducted another controlled purchase over a chat platform of "three packs of Adderall Substitute 10 x 60mg" from Fastjack1. (*Id*. ¶ 29.) The undercover agent transferred 0.017 bitcoin (approximately $363.95) to an address Fastjack1 provided and directed the shipment to an undercover address in law enforcement's control. (*Id*.) Law enforcement again conducted surveillance on Mr. Brandstrom's residence and observed him leave the residence with a white plastic bag that

he placed in his vehicle. (*Id.* ¶ 30.) Law enforcement followed Mr. Brandstrom to a USPS blue collection box at the corner of Stinson Blvd NE and 37th Place NE near Columbia Heights, Minnesota. (*Id.*) Law enforcement then observed Mr. Brandstrom exit his vehicle with the same white plastic bag, empty its contents into the mail collection box, and then leave the area in his vehicle. (*Id.*)

Once Mr. Brandstrom departed, a USPIS inspector accessed the collection box and discovered the parcel related to the undercover purchase. The parcel again contained the consignee information the agent provided to Fastjack1 and the USPS tracking information Fastjack1 provided to the undercover agent. (*Id.* ¶ 31.) Law enforcement opened the parcel and "discovered a manila envelope, invoice, and three green mylar bags that each held ten blue/clear capsules with a white powdery substance, totaling 8.5 grams of laboratory-confirmed amphetamine and caffeine." (*Id.*)

The affidavit next describes an undercover purchase conducted on December 15, 2022. (*Id.* ¶ 34.) Again, the HSI undercover agent purchased "three packs of Adderall Substitute 10 x 60mg" from Fastjack1 over a chat platform. (*Id.*) The agent transferred 0.021 bitcoin (approximately $361.49) to an address Fastjack1 provided and directed shipment to an undercover address in law enforcement's control. (*Id.*) Law enforcement then conducted surveillance on Mr. Brandstrom and observed him walk toward his vehicle carrying a white plastic bag. (*Id.*) Mr. Brandstrom opened the vehicle's trunk and accessed contents inside. (*Id.*) Mr. Brandstrom then closed the trunk and walked toward his gray 2013 Toyota Sienna minivan, while still carrying the white plastic bag. (*Id.*) Mr. Brandstrom placed the white plastic bag in the minivan and drove away. (*Id.*) Law

enforcement followed Mr. Brandstrom to the United States Post Office at 940 44th Ave NE, Minneapolis, MN 55421. (*Id*. ¶ 35.) Officers observed Mr. Brandstrom place items in a blue mail collection box and then leave. (*Id*.) Upon Mr. Brandstrom's departure, law enforcement accessed the contents of the blue collection box and discovered the parcel related to the undercover purchase. (*Id*. ¶ 36) Again, the parcel contained consignee information the undercover agent provided to Fastjack1, and the USPS tracking information Fastjack1 provided to the agent. (*Id*.) Law enforcement opened the parcel and discovered "a manila envelope, invoice, and three black mylar bags that each held ten blue/clear capsules with a white powdery substance, totaling 8.0 grams of laboratory-confirmed amphetamine and caffeine." (*Id*.)

The affidavit also describes an undercover purchase from April 2023. (*Id*. ¶¶ 37-38.) The undercover agent again contacted Fastjack1 and placed an order for "5 packs of Adderall RX 5x30 mg IR." (*Id*. ¶ 38.) The undercover agent transferred 0.025 bitcoin (approximately $758.95) to an address Fastjack1 provided and directed the shipment to an undercover address in law enforcement's control. (*Id*.) Fastjack1 confirmed the sale and provided the undercover agent with a USPS Priority tracking number. (*Id*.)

The package was delivered to the undercover address where USPIS took custody of it. (*Id*. ¶ 39.) The package contained the same USPS Priority tracking number Fastjack1 provided to the undercover agent. (*Id*.) Law enforcement opened the package, which contained "five gold-colored mylar pouches labeled as 'Phenibut Nootropic Supplement'[.]" (*Id*.) Each mylar pouch contained "five orange-colored tablets bearing the markings "e 506" and "30." The total combined weight of the twenty-five tablets was

6

approximately 10.0 grams. Laboratory analysis was conducted on the tablets by the U.S. Food and Drug Administration, Forensic Chemistry Center (FCC), which were found to contain amphetamine and sucrose. (*Id.*)

The affidavit next describes a controlled purchase from July 2023. (*Id.* ¶¶ 40-41.) On July 12, the undercover agent conducted a controlled purchase of "'three packs of Adderall Substitute 10 x 60mg' with Priority USPS shipping from Fastjack1[.]" (*Id.* ¶ 41.) Law enforcement transferred 0.012 bitcoin (approximately $370.64) to an address Fastjack1 provided and directed shipment to an undercover address in law enforcement's control. (*Id.*) Law enforcement then conducted surveillance of Mr. Brandstrom. (*Id.* ¶ 42.) Law enforcement followed Mr. Brandstrom to a USPS blue mail collection box at 5192 Central Avenue NE, Minneapolis, MN 55421, where he was observed placing items in the box, and then leaving the area. (*Id.*)

Law enforcement accessed the contents of the blue mail collection box and discovered the parcel related to the undercover purchase. (*Id.* ¶ 43.) The parcel contained the consignee information the undercover agent provided to Fastjack1, and the USPS Priority tracking number Fastjack1 provided to the agent. (*Id.*) Law enforcement opened the parcel and discovered a "manila envelope, invoice, and three black mylar bags that each held ten red/clear capsules with a white powdery substance. This white powdery substance was later confirmed by a laboratory to contain caffeine." (*Id.*)

Finally, the affidavit describes an October 2023 surveillance operation conducted on Mr. Brandstrom's residence. (*Id.* ¶¶ 44-45) On October 3, 2023, law enforcement observed Mr. Brandstrom exit his residence carrying a dark-colored bag and black

backpack. (*Id.* ¶ 44.) Mr. Brandstrom approached his vehicle, placed the bag in the trunk, entered the vehicle's driver's side with the backpack, and departed the area. (*Id.*) Law enforcement followed Mr. Brandstrom to a Cub Foods grocery store at 3930 Silver Lake Rd, St. Anthony, Minnesota 55421. (*Id.*) Mr. Brandstrom exited the vehicle carrying a white plastic bag, approach a USPS blue mail collection box, and place the bag's contents into the box. (*Id.*) Law enforcement then observed Mr. Brandstrom go into the grocery store, make a purchase, then leave the area. (*Id.*)

Later that afternoon, law enforcement accessed the contents of the blue mail collection box and discovered "five parcels bearing the same sender information, Lively Supplement Shoppe of 1839 Pleasant St., Saint Paul, Minnesota, 55113" which resembled drug packages Mr. Brandstrom had previously shipped. (*Id.* ¶ 45.) Law enforcement detained the packages and obtained a warrant to search the packages. (*Id.*) The search resulted in the seizure of "13.5 grams of red and clear capsules filled with a white powdery substance that field tested positive for amphetamine." (*Id.*)

The affidavit also states that Mr. Brandstrom's maintained a cryptocurrency exchange account to transfer suspected narcotics proceeds to other accounts, and that account was registered to his residence. (*Id.* ¶¶ 80-83.) Mr. Brandstrom's Vanguard brokerage account, which also received a portion of suspected narcotics proceeds, was also registered to his residence. (*Id.* ¶¶ 93-99.)

## ANALYSIS

I.    **MR. BRANDSTROM'S MOTION TO SUPPRESS EVIDENCE SHOULD BE DENIED.**

The Court first turns to Mr. Brandstrom's Motion to Suppress Evidence Obtained Pursuant to Residential Search Warrant and Affidavits. Mr. Brandstrom argues that the affidavit which supports the warrant to search his home fails to establish a nexus between his residence and criminal activity and thus fails to establish probable cause. As a result, in Mr. Brandstrom's estimation, the warrant is invalid, and all evidence derived from the search must be suppressed. The government counters that the affidavit provides "overwhelming evidence" that Mr. Brandstrom's residence was the "operational hub of a sophisticated drug distribution scheme." (Doc. 73 at 2.) Moreover, according to the government, even if the warrant lacked probable cause, suppression is inappropriate here based on the *Leon*[2] good-faith exception to the exclusionary rule.

A.    **The warrant affidavit established a sufficient nexus between Mr. Brandstrom's residence and criminal activity.**

A warrant to search a place may only issue if there is evidence of a nexus between contraband and the place to be searched. *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). In making this determination, courts consider "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (*United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016)). The determination of probable cause—that is, whether such a nexus exists—is based on "a

---

[2] *United States v. Leon*, 468 U.S. 897 (1984).

practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the court] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Markwald,* No. 21-cr-21 (ECT/BRT), 2021 WL 6808303, at *11 (D. Minn. Nov. 4, 2021) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)), *R. & R. adopted*, 2022 WL 43306 (D. Minn. Jan. 5, 2022); *see also United States v. Neadeau*, No. 20-cr-224 (WMW/LIB), 2021 WL 4046393, at *4 (D. Minn. June 22, 2021) (noting that warrant-issuing courts may draw reasonable inferences about where evidence is likely to be kept), *R. & R. adopted*, 2021 WL 367496 (D. Minn. Aug. 19, 2021).

Once a warrant has issued, courts reviewing the warrant after the fact accord "great deference to the issuing judge's determination that [the] affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (quoting *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009)). Accordingly, the reviewing judge does not examine the warrant to determine whether the issuing judge was presented with probable cause; instead, reviewing courts, such as this one, "need only ensure that the issuing official had a substantial basis to conclude that probable cause existed." *United States v. Anderson,* 933 F.2d 612, 614 (8th Cir. 1991).

Here, law enforcement sought a warrant to search Mr. Brandstrom's residence for evidence of distribution of controlled substances, money laundering, and conspiracy to manufacture, distribute, and to possess with intent to distribute controlled substances. The affidavit to search Mr. Brandstrom's residence details that during a years-long investigation into Mr. Brandstrom's activities, law enforcement corroborated, through

10

multiple undercover operations, the nexus between Mr. Brandstrom's residence and ongoing controlled substance distribution activity. The affidavit states that on multiple occasions in May, October, and December 2022, and July 2023 an undercover agent purchased "Adderall Substitute" from "Fastjack1." Shortly after each purchase was confirmed, law enforcement observed Mr. Brandstrom leave his residence with a bag and deposit parcels into USPS collection boxes. Law enforcement recovered the parcels and confirmed they contained amphetamine.

Additionally, in October 2023, independent from the multiple undercover purchases, law enforcement observed Mr. Brandstrom leave his residence carrying a dark colored bag and a black backpack, which he placed in his vehicle before driving to a USPS blue mail collection box outside of a grocery store. At the collection box, law enforcement observed Mr. Brandstrom retrieve a white plastic bag from his vehicle and deposit its contents into the mailbox before going into the store. Once Mr. Brandstrom left the area, law enforcement accessed the collection box and recovered five parcels, all labeled with the same sender information. Pursuant to federal search warrant, law enforcement discovered 13.5 grams of red and clear capsules containing a white powder that field-tested positive for amphetamine. The affidavit also establishes that Mr. Brandstrom's Binance cryptocurrency account and other financial accounts, which he used to receive proceeds from suspected controlled substance sales, were registered to his residence.

Taken together, law enforcement's multiple undercover purchases followed by Mr. Brandstrom's observed immediate departure from his residence to mail the corresponding parcels, along with law enforcement's independent surveillance of Mr. Brandstrom which

culminated in the recovery of multiple parcels containing controlled substances, establishes a repeated pattern of suspected trafficking activity originating from his residence. But this is not the only information that was available to the issuing judge. The affidavit also establishes that multiple financial accounts Mr. Brandstrom used to receive the proceeds from suspected controlled substance sales were registered to his residence as well. The Court therefore finds that the information in the affidavit provides a substantial basis to believe that evidence of criminal activity would be discovered at Mr. Brandstrom's residence. *See United States v. Penaloza-Romero*, No. 14-cr-2898 SRN/JSM, 2015 WL 3742994, at *5 (D. Minn. June 15, 2015) (upholding warrant to search defendant's residence where defendant was observed leaving residence with evidence of criminal activity); *accord Neadeau*, 2021 WL 4046393, at *4.

## B.    Good faith.

While evidence seized under the authority of a defective warrant will generally be excluded, under the *Leon* good-faith exception, "evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (citing *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." *Proell*, 485 F.3d at 430 (quoting *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (cleaned up)).

Of the limited bases for finding the good faith exception inapplicable, *see Perry*, 531 F.3d at 665, none exist here: there is no evidence of any false or misleading statements in the warrant application; there is no suggestion the issuing judge abandoned his neutral role; the affidavit in support of the warrant was not lacking in probable cause; and the warrant is not alleged to be facially deficient. Accordingly, the Court concludes that the good-faith exception would apply to the residence warrant and the evidence discovered because of its execution should not be suppressed even if the warrant were unconstitutional. Accordingly, Mr. Brandstrom's Motion to Suppres Evidence Obtained Pursuant to Residential Search Warrant and Affidavits (Doc. 57) should be denied.

## II.    MR. BRANDSTROM'S MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED.

In his Motion to Dismiss, Mr. Brandstrom moves the Court to dismiss the indictment under Federal Rule of Criminal Procedure 12(b)(3) based on alleged "government misconduct" which he argues "shocks the conscience." (Doc. 64 at 1.) He contends that the government's alleged misconduct violates due process and to "restore fairness" the indictment must be dismissed with prejudice. (*Id*. at 3.) But in his most recent supplementary brief, Mr. Brandstrom clarifies that he no longer seeks to dismiss the charges against him and instead asks the Court for series of "supervisory remedies" including an evidentiary hearing, "supervisory orders," and "findings of fact." (Doc. 72 at 6-7.) Because Mr. Brandstrom advances no basis in law or fact to support these remedies, the Court recommends that his Motion to Dismiss the Indictment (Doc. 64) be denied.

### III.    MR. BRANDSTROM'S MOTION TO SEVER IS DENIED.

Next, the Court turns to Mr. Brandstrom's Motion to Sever Count 8. Mr. Brandstrom moves the Court to sever Count 8—money laundering—from the remaining drug counts and order a separate trial. According to Mr. Brandstrom, Count 8 must be severed from the other charges in the indictment because it is based on different evidence and witnesses. Thus, from Mr. Brandstrom's perspective, trying Count 8 along with the other charges will create a substantial risk of prejudice to him. The government, for its part, counters that joinder is proper here because Count 8 is part of the same common scheme as the other charges, and Mr. Brandstrom cannot show the severe prejudice required for severance.

Under Rule 8(a) of the Federal Rules of Criminal Procedure, a defendant may be charged "in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." But a district court may nonetheless sever joined charges if a defendant demonstrates prejudice, that is, a showing that joinder will deprive him of "an appreciable chance for an acquittal." *See United States v. Goodhouse*, 81 F.4th 786, 791 (8th Cir. 2023). To make such a showing, defendant must convince the Court that a jury "will be unable to compartmentalize the evidence." *United States v. Sandstrom*, 594 F.3d 634, 644 (8th Cir. 2010). Even where a risk of prejudice may exist, the best remedy is not severance, but "careful and thorough jury instructions." *United States v. Whitfield,* 140 F.4th 978, 985 (8th Cir. 2025) (citing *United States v. Delpit*, 94 F.3d 1134, 1144 (8th Cir. 1996).)

14

Here, joinder is appropriate because the money-laundering and drug-trafficking offenses charged in the indictment arise from the same series of alleged acts. The laundering transactions exist only because of the cryptocurrency drug proceeds generated through Mr. Brandstrom's alleged online drug trafficking activity. This is precisely the type of common scheme behavior that Rule 8(a) contemplates. *United States v. Rock*, 282 F.3d 548, 552 (8th Cir. 2002). Moreover, Mr. Brandstrom has failed to show how he will be prejudiced by joining Count 8 with the other charges, besides general allegation that joinder will create the risk of a conviction based on "prejudice rather than proof." This is an unconvincing argument that the jury will be unable to compartmentalize the evidence at trial, let alone that any risk of prejudice cannot be mitigated by careful and thorough jury instructions. As a result, Mr. Brandstrom's Motion to Sever Count 8 (Doc. 63) is denied.

## IV. MR. BRANDSTROM'S MOTION FOR INDEPENDENT LABORATORY TESTING IS DENIED.

The Court next addresses Mr. Brandstrom's Renewed Motion for Independent Laboratory Testing. In his motion, Mr. Brandstrom asks the Court again for "authorization to conduct independent laboratory testing of the alleged controlled substances seized in this matter." (Doc. 59 at 1.) The Court previously denied Mr. Brandstrom's motion without prejudice because he had failed to identify a qualified laboratory or testing protocol. (*See* Doc. 51.) Now, in his renewed motion, Mr. Brandstrom attests that he has identified an accredited laboratory that has agreed to conduct the testing he seeks (*see* Defense Ex. A[3]

---

[3] Defense Exhibits A and B were submitted and accepted by the Court along with Mr. Brandstrom's Renewed Motion for Independent Laboratory Testing on September 10,

*found at* Doc. 60) and proposes a testing protocol that he says ensures safety and chain of custody of the evidence (*see* Def. Ex. B *found at* Doc. 59 at 6-7). As a result, Mr. Brandstrom contends that the Court should grant his request for independent testing so that he may conduct his own "identity and composition testing[.]" (Doc. 72 at 7.)

The government, for its part, argues that Mr. Brandstrom's motion should be denied because although he professes to seek to confirm the substance's identity and not only test its purity, his own lab quote states that "[t]he goal of this analysis is to determine the purity of each amphetamine powder sample to aid in your legal case." (Def. Ex. A at 1.) From the government's perspective, purity testing is irrelevant because the amount of amphetamine contained in the mixtures will have no impact on his Sentencing Guidelines. *See* U.S.S.G. § 2D.1.1; *see also United States v. Ortega*, 150 F.3d 937, 944 (8th Cir. 1998). Rather, if he is convicted, says the government, Mr. Brandstrom's Sentencing Guidelines will be determined by the weight of the total mixtures, not purity.

Mr. Brandstrom acknowledges in his supplemental brief that purity testing is "irrelevant," but insists that the purpose of independent testing is to prove the identity of the substances. (Doc. 72 at 7.) But his own lab quote shows that the lab he has identified intends to conduct purity testing and makes no mention of testing the substance's identity. (*See* Def. Ex. A at 1.) Moreover, the lab represents that it will provide no expert witness to authenticate the test results. (*See id*.)  Because purity testing has no relevance in this case,

_____

2025 (*see* Docs. 59, 60) and were not offered at the criminal pretrial motions hearing on October 21, 2025 (*see* Doc. 69).

and because the testing sought will not lead to the submission of admissible evidence, Mr.

Brandstrom's Renewed Motion for Independent Laboratory Testing (Doc. 59) is denied.

## V.    MR. BRANDSTROM'S MOTION FOR BILL OF PARTICULARS AS APPLIED TO COUNT 1 IS DENIED.

The Court turns next to Mr. Brandstrom's Motion for Bill of Particulars as to Count

1. Mr. Brandstrom argues that Count 1, which alleges his involvement in a conspiracy to

distribute controlled substances, is vague and therefore forces him to guess at the

government's theory of the conspiracy. He asks the Court to order the government, under

Rule 7(f) of the Criminal Rules, to identify his co-conspirators and their role in the alleged

conspiracy. The government contends that because Count 1 satisfies the requirements of

Rule 7(f) by providing Mr. Brandstrom sufficient notice of the charge to prepare his

defense and avoid unfair surprise, his motion should be denied.

"The purpose of a bill of particulars is to inform the defendant of the nature of a

charge with sufficient precision to enable him to prepare for trial and to avoid or minimize

the danger of surprise at trial." *United States v. Lundstrom*, No. 14-cr-3136, 2015 WL

4249451, at *2 (D. Neb. July 13, 2015) (citing *United States v. Livingstone*, 576 F.3d 881,

883 (8th Cir. 2009)) (cleaned up), *R. & R. adopted*, 2015 WL 5881898 (D. Neb. Oct. 7,

2015), *aff'd*, 880 F.3d 423 (8th Cir. 2018). A bill of particulars may be required when the

indictment is vague on its face or contains conclusory allegations that fail to provide the

accused with sufficient notice of the crimes with which he is charged. *Id*. But a bill of

particulars is "not a discovery device to be used to require the government to provide a

detailed disclosure of the evidence that it will present at trial." *Id.* (quoting *Livingstone*, 576 F.3d at 883) (cleaned up).

The Court denies Mr. Brandstrom's motion because Count 1 adequately informs him of the charge against him. The government also represents that it has "provided extensive discovery, including the 131-paragraph search-warrant affidavit, surveillance reports, undercover purchase documentation, financial analyses, and seizure records[.]" (Doc. 73 at 9.) Based on this representation, the Court concludes that the government has provided Mr. Brandstrom with sufficient notice to allow him to "understand the nature of the charges against him, prepare a defense, and avoid any surprise." *United States v. Milk*, 66 F.4th 1121, 1133 (8th Cir. 2023) (quoting *United States v. Shepard*, 462 F.3d 847, 860 (8th Cir. 2006)). Accordingly, Mr. Brandstrom's Motion for Bill of Particulars as to Count 1 (Doc. 66) is denied.

## VI.   MR. BRANDSTROM'S MOTION TO DECLARE U.S.S.G. § 2D1.1 INVALID AS APPLIED TO AMPHETAMINE SULPHATE, OR IN THE ALTERNATIVE APPLY PRE-2001 COCAINE GUIDELINE, OR FOR DOWNWARD VARIANCE IS DENIED WITHOUT PREJUDICE.

Finally, the Court turns to Mr. Brandstrom's Motion to Declare U.S.S.G. § 2D1.1 Invalid as Applied to Amphetamine Sulphate, or in the Alternative Apply Pre-2001 Cocaine Guideline, or for Downward Variance. In this motion Mr. Brandstrom challenges the validity of the sentencing guidelines as they apply to him. But challenges to the application or validity of the Sentencing Guidelines do not arise until sentencing, if there is a conviction. As a result, Mr. Brandstrom's Motion to Declare U.S.S.G. §§ 2D1.1 Invalid as Applied to Amphetamine Sulphate, or in the Alternative Apply Pre-2001 Cocaine

Guideline, or for Downward Variance (Doc. 62) is denied without prejudice to Mr. Brandstrom renewing his motion, if he is convicted.

**RECOMMENDATION**

Accordingly, based on all the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Defendant Ryan Brandstrom's Motion to Suppress Evidence Obtained Pursuant to Residential Search Warrant and Affidavits (Doc. 57) be **DENIED**; and

2. Mr. Brandstrom's Motion to Dismiss the Indictment for Outrageous Government Conduct (Doc. 64) be **DENIED**.

**ORDER**

Accordingly, based on all the files, records, and proceedings in this case, **IT IS ORDERED** that:

1. Mr. Brandstrom's Renewed Motion for Independent Laboratory Testing (Doc. 59) is **DENIED**;

2. Mr. Brandstrom's Motion to Declare U.S.S.G. § 2D1.1 Invalid as Applied to Amphetamine Sulfate; or in the Alternative to Apply Pre-2001 Cocaine Guideline for Downward Variance (Doc. 62) is **DENIED**;

3. Mr. Brandstrom's Motion to Sever Count 8 (Doc. 63) is **DENIED**; and

4. Mr. Brandstrom's Motion for Bill of Particulars (Doc. 66) is **DENIED**.

Date: January 9, 2026                    *s/Douglas L. Micko*
                                         DOUGLAS L. MICKO
                                         United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).