# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

Case No. 24-cr-234 (JWB/DLM)

Plaintiff,

v.

**ORDER ACCEPTING
REPORT AND RECOMMENDATION
OF MAGISTRATE JUDGE**

Ryan Brandstrom,

Defendant.

Bradley M. Endicott, Esq., United States Attorney's Office, counsel for Plaintiff.

Ryan Brandstrom, pro se Defendant; Adrian Scott LaFavor-Montez, stand-by counsel for Defendant.

United States Magistrate Judge Douglas Micko filed a Report and Recommendation ("R&R") in this matter on January 9, 2026. (Doc. No. 74.) The Magistrate Judge recommends denying Defendant Ryan Branstrom's Motions to Suppress Evidence and to Dismiss the Indictment (Doc. Nos. 57, 64). Defendant has filed objections to the recommendation that his motion to suppress be denied, but he does not object to denying the motion to dismiss. (Doc. No. 76.) After review, and for the following reasons, Defendant's objections are overruled, and the R&R is adopted.

## DISCUSSION

District courts review the portions of a magistrate judge's R&R to which a party does not object for clear error. *See* 28 U.S.C. § 636(b); Fed. R. Crim. P. 59(b); D. Minn. LR 72.2; *United States v. Newton*, 259 F.3d 964, 966 (8th Cir. 2001) (failing to file

objections waives the right to de novo review of any portion of an R&R). Portions to which a party does object are reviewed de novo. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3). A district judge may accept, reject, or modify all or part of the findings or recommendations. *See id.*

The R&R is well-reasoned and correctly applies the law. It sets forth the relevant facts in detail, and those facts are fully adopted here. In summary, the government alleges that Defendant operated an amphetamine trafficking scheme on the dark web and encrypted marketplaces between August 2017 and December 2023 and used the United States Postal Service ("USPS") to distribute controlled substances to various places across the country.

Law enforcement sought and obtained a federal warrant to search and seize items from Defendant's residence, detached garage, two vehicles, his person, and financial accounts. (*See* Doc. No. 73-1, 12/1/23 search warrant and affidavit.) The seized evidence led to the charges against Defendant for conspiracy to distribute controlled substances, distribution of a controlled substance, possession with intent to distribute controlled substances, and money laundering.

Defendant moved to suppress the evidence obtained from the search of his home and any evidence seized later that flowed from that search, arguing that the affidavit supporting the warrant failed to establish a nexus between his residence and criminal activity and thus failed to establish probable cause. The Magistrate Judge recommends denying the motion to suppress, finding the affidavit did establish a sufficient nexus. The Magistrate Judge also recommends denying the motion to dismiss the indictment because

Defendant indicated in his briefing that he no longer seeks to dismiss the charges against him. The Magistrate Judge's reasoning is accepted in its entirety.

First, Defendant does not object to the recommendation to deny the motion to dismiss. That recommendation is reviewed for clear error, and no clear error is found.

Defendant objected to the recommendation regarding his motion to suppress so that motion is reviewed de novo.

A warrant to search a place may only be issued if there is evidence of a nexus between the suspected criminal activity and the place to be searched. *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). Upon full review, the warrant affidavit presents sufficient information to demonstrate the required nexus. Information contained in the warrant affidavit included the following:

- In May 2021, federal law enforcement located "Fastjack1," a "known darknet narcotic vendor operation in the Minnesota area" since May 2021. The vendor advertised listings for an "Adderall Substitute." (Doc. No. 73-1 at ¶ 19.)

- In August 2021, an undercover Homeland Security Investigations ("HSI") agent conducted a controlled buy of "50 x Adderall Substitute 30 mg" from Fastjack1 on the darknet marketplace "White House Market" in exchange for approximately 1.2899 Monero, or about $300. The undercover agent directed the shipment to a government-controlled undercover address in Colorado, where Fastjack1 confirmed the address and provided a USPS tracking number. Days later, law enforcement received a package containing "five white mylar pouches" containing 10 "blue/ clear capsules with a white powdery substance, totaling 16.5 grams of laboratory confirmed amphetamine and caffeine." The tracking number that Fastjack1 had provided had a return address of Wooddale Drive in Saint Paul, Minnesota, 551125. (*Id*. ¶¶ 21–22.)

- In May 2022, the undercover agent purchased "three packs of Adderall Substitute x 60mg" for 0.0095 bitcoin, approximately $368.80, to an address Fastjack1 provided and directed the shipment to an undercover address in law enforcement's control. That same day, law enforcement conducted surveillance on Defendant's residence. Law enforcement officers observed Defendant leave his residence

carrying a white bag which he placed in his vehicle. Law enforcement officers followed Defendant to a USPS and observed Defendant place multiple items in a USPS blue mail collection box and leave the area. Immediately after, a United States Postal Inspection Services ("USPIS") inspector accessed the box's contents and discovered a parcel related to the undercover purchase. Law enforcement opened the parcel, which contained information Fastjack1 provided to the undercover agent, and a "manila envelope, invoice, and three black mylar bags which contained ten blue/ clear capsules with a white powdery substance, totaling 8.0 grams of laboratory confirmed amphetamine and caffeine." (*Id*. ¶¶ 25–27.)

- On October 26, 2022, an HIS agent conducted another controlled purchase from Fastjack1 for "three packs of Adderall Substitute 10 x 60mg." The agent transferred 0.017 bitcoin, approximately $363.95 to an address provided by Fastjack1 and directed the shipment to an undercover address under law enforcement's control. Law enforcement again conducted surveillance on Defendant's home and observed him leave the residence with a white plastic bag which he placed inside his vehicle. Law enforcement followed Defendant to a USPS collection box where Defendant was observed emptying the contents of the white plastic bag into the collection box before leaving. After Defendant left, a USPIS inspector searched the collection box and discovered the parcel related to the undercover purchase. The parcel contained the information the agent provided to Fastjack1 and the USPS tracking information Fastjack1 provided to the agent. Upon opening the parcel, law enforcement "discovered a manila envelope, invoice, and three green mylar bags that each held ten blue/ clear capsules with a white powdery substance, totaling 8.5 grams of laboratory confirmed amphetamine and caffeine." (*Id*. ¶¶ 29–31.)

- On December 15, 2022, an HSI undercover agent purchased "three packs of Adderall Substitute 10 x 60mg" from Fastjack1 for 0.021 bitcoin, approximately $361.49, to an address provided by Fastjack1 and directed the shipment to an undercover address under law enforcement's control. Law enforcement again conducted surveillance on Defendant's home and observed him walk out with a white plastic bag which Defendant placed in his vehicle. Law enforcement followed Defendant to a United States Post Office, where they observed him place items into a mail collection box. After Defendant left, law enforcement accessed the collection box and discovered the parcel related to the undercover purchase. The parcel contained information the undercover agent provided to Fastjack1 and the USPS tracking information Fastjack1 provided to the agent. Inside the package, law enforcement discovered "a manila envelope, invoice, and three black mylar bags that each held ten blue/ clear capsules with a white powdery substance, totaling 8.0 grams of laboratory confirmed amphetamine and caffeine." (*Id*. ¶¶ 34–36.)

- In April 2023, the agent again contacted Fastjack1 and ordered "5 packs of Adderall RX 5x30 mg IR" for 0.025 bitcoin, sent approximately $758.95 to an address Fastjack1 provided, and directed the shipment to an undercover address in law enforcement's control. The package was delivered to the undercover address, and USPIS took custody of the package. Upon opening the package, law enforcement discovered "five gold-colored mylar pouches labeled as 'Phenibut Nootropic Supplement.'" Each pouch contained "five orange-colored tablets bearing the markings "e 506" and the total combined weight of the twenty-five tablets was approximately 10.0 grams, containing laboratory confirmed amphetamine and sucrose. (*Id*. ¶¶ 37–39.)

- On July 12, 2023, the undercover agent purchased "'three packs of Adderall Substitute 10 x 60mg' with Priority USPS shipping from Fastjack1" for 0.012 bitcoin, approximately $370.64, sent to an address provided by Fastjack1, and directed the shipment to an undercover address in law enforcement's control. Law enforcement conducted surveillance on Defendant's home and followed Defendant to a USPS mail collection box where Defendant was observed placing items in the box and leaving the area. Law enforcement accessed the contents of the mail collection box and discovered the parcel related to the undercover purchase. The parcel contained information the undercover agent provided to Fastjack1 and the USPS Priority tracking number Fastjack1 provided to the agent. Upon opening the parcel, law enforcement discovered a "manila envelope, invoice, and three black mylar bags that each held ten red/clear capsules with a white powdery substance, which was later confirmed by a laboratory to contain caffeine." (*Id*. ¶¶ 41–43.)

- On October 3, 2023, law enforcement observed Defendant leave his residence carrying a dark-colored bag and black backpack which he placed in his vehicle. Law enforcement followed Defendant to a Cub Foods grocery store where Defendant was observed exiting his vehicle carrying a white plastic bag and emptying its contents into a USPS mail collection box. Law enforcement accessed the contents of the mail collection box and discovered "five parcels bearing the same sender information, Lively Supplement Shoppe of 1839 Pleasant St. Saint Paul, Minnesota, 55113" which resembled drug packages Defendant had previously shipped. Law enforcement detained the packages and obtained a warrant to search the packages. The search resulted in the seizure of "13.5 grams of red and clear capsules filled with a white powdery substance that field tested positive for amphetamine." (*Id*. ¶¶ 44–45.)

- Defendant also maintained a cryptocurrency exchange account to transfer narcotics proceeds to other accounts, and the account was registered to Defendant's residence. (*Id*. ¶¶ 80–83.)

- Defendant's Vanguard brokerage account also received a portion of narcotics proceeds and was also registered to his residence. (*Id*. ¶¶ 93–99.)

Defendant argues that the search warrant affidavit lacks probable cause because it does not establish a nexus between his residence and the criminal activity. Specifically, he argues that his association with his own residence and any observations of him coming from his residence are insufficient to infer that evidence of a crime would be found inside his home. According to Defendant, references to bags he was carrying does not establish what was in those bags when he left his home. Further, he asserts that financial accounts being registered to his residence do not allow an inference of criminal activity. Defendant also criticizes the R&R for referring to his departures as "immediate" after a purchase when the affidavit only refers to departures being same day and disputes the conclusion that trafficking activity "originated from" the residence.

Whether a nexus exists depends on a practical evaluation of the circumstances described in the affidavit and whether those circumstances establish a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 1983. The affidavit does not need to express all facts known to the officers at the time; it needs only to set forth sufficient facts to establish probable cause. *Tech. Ordnance, Inc. v. United States*, 244 F.3d 641, 649 (8th Cir. 2001). In reviewing the affidavit, it must be evaluated as a whole and interpreted in a realistic, common-sense manner. *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998). Reasonable inferences are allowed. *See United States v. James*, 3 F.4th 1102, 1105 (8th Cir. 2021).

Here, the officer included information learned over the course of a multiple-year investigation. This included detailed descriptions of numerous undercover purchases, several where law enforcement observed Defendant leave his residence after a purchase was made with bags transporting parcels to USPS collection boxes. (Doc. No. 73-1 at ¶¶ 26, 30, 35, 42, 44.) Law enforcement then recovered the parcels and confirmed they contained controlled substances. (*Id*. at ¶¶ 27, 31, 36, 43, 45.) The affidavit also included information about other surveillance of Defendant leaving his residence which led to the recovery of parcels containing controlled substances. (*Id*. ¶¶ 25–27, 29–31, 34–36, 40–45.)

Law enforcement also provided specific information indicating that Defendant used multiple financial accounts to receive proceeds from suspected controlled substances sales. Specifically, the affidavit states that seized marketplace data and undercover purchase operations revealed multiple Bitcoin clusters used by Defendant to receive the suspected proceeds of controlled substances. (*Id*. ¶¶ 48–49.) Among other things, the affidavit also describes the movement of funds on Coinbase between Defendant and customers who USPIS identified as intended recipients of packages sent by Defendant. (*Id*. ¶¶ 51-52a-d.) Law enforcement additionally reviewed the Bitcoin clusters provided by Defendant following their undercover purchases finding that portions of the funds were sent to various swapper services in a practice known as "chain-hopping," a practice used as a measure to "clean" cryptocurrency assets. (*Id*. ¶¶ 60–62.) Overall, law enforcement's investigation revealed that several of Defendant's financial accounts were used to receive, conceal, and transfer proceeds from

7

the suspected sales of controlled substances. (*Id.* ¶¶ 70–71, 75.) And those financial accounts were registered to Defendant's residence.

With these descriptions, the issuing judge had an ample basis to conclude that probable cause exists to search Defendant's residence for evidence of distribution of controlled substances; money laundering; and conspiracy to manufacture, distribute, and to possess with intent to distribute controlled substances. *See United States v. Anderson*, 933 F.2d 612, 614 (8th Cir. 1991) (stating the affidavit "cannot be attacked paragraph by paragraph; it must be evaluated as a whole"); *see also United States v. Keele*, 589 F.3d 940 (8th Cir. 2009) (stating that substantial deference is given to the issuing judge's determination that an affidavit establishes probable cause).

Finally, Defendant takes issue with the Magistrate Judge's application of the *Leon* good-faith exception. Under the *Leon* exception, evidence seized pursuant to a search warrant that lacked probable cause may be admissible if the executing officer's reliance on the warrant is objectively reasonable. *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). Here, probable cause existed. But even if it did not, the *Leon* exception applies because based on the information contained in the warrant affidavit, a reasonably trained officer would not have known that the search was illegal despite the issuing judge's authorization. *United States v. Proell,* 485 F.3d 427, 430 (8th Cir. 2007). There is no evidence of any false or misleading statements in the warrant application, and there is no suggestion that the issuing judge abandoned their neutral role.

Therefore, for the reasons set forth in the R&R and as stated above, Defendant's objections are overruled, the Magistrate Judge's recommendation is accepted in full, and Defendant's motions are denied.

## ORDER

**IT IS HEREBY ORDERED** that:

1.      Defendant Ryan Brandstrom's Objections to the January 9, 2026 Report and Recommendation (Doc. No. 76) are **OVERRULED**;

2.      The January 9, 2026 Report and Recommendation (Doc. No. 74) is **ACCEPTED**;

3.      Defendant's Motion to Suppress Evidence (Doc. No. 57) is **DENIED**; and

4.      Defendant's Motion to Dismiss the Indictment (Doc. No. 64) is **DENIED**.

Date: March 6, 2026                         *s/ Jerry W. Blackwell*
                                            JERRY W. BLACKWELL
                                            United States District Judge

9